Georgia B. Lonsdale, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 97450.  Promulgated September 27, 1940.

*Delos C. Johns, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

#### OPINION.

Arnold: This proceeding involves an income tax deficiency for 1936 of $2,011.75, of which $1,567.43 is in controversy.  The sole issue is whether capital gains realized by two trusts created by petitioner are taxable to her under section 167 of the Revenue Act of 1936.  The parties filed a written stipulation of facts which we adopt as our findings of fact, and hereinafter set forth the portions thereof deemed pertinent to the issue.

The petitioner resided during the taxable year in Kansas City, Missouri.

On or about June 28, 1934, petitioner executed and delivered two substantially identical trust indentures, one of which named Alfred Lonsdale, a brother of her deceased husband, as beneficiary and the other named Alice Bagley Mulford as beneficiary.  The two trusts will hereinafter be referred to as the Lonsdale trust and the Mulford trust.  By the indentures she conveyed certain shares of corporate stock to her son, Charles W. Lonsdale, Jr., in trust, to pay a stated annual amount out of the net income of each trust to the beneficiary named therein; any excess net income was to be paid to petitioner, or, if petitioner was deceased, as otherwise specified in the trust instruments, which dispositions are not here material.

The shares transferred were 50 shares of the preferred stock of the Diamond Match Co. and 100 shares of the common stock of the Ameri-

can Telephone & Telegraph Co. to the Lonsdale trust, and 300 shares of the common stock of Campania Swift Internacional and 100 shares of the common stock of the American Telephone & Telegraph Co. to the Mulford trust. Alfred Lonsdale was to receive up to, but not in excess of $936 per year as long as he lived; Alice Bagley Mulford was to receive up to, but not in excess of $1,500 per year during her lifetime. Each trust was to terminate upon the death of the named beneficiary, at which time the trust corpus was to be paid over and distributed to petitioner if she were still living, or, if not living, to such person or persons as she provided for in her will, and in the absence of any testamentary disposition, to her residuary legatee, or, if petitioner died intestate, to her heirs at law in accordance with the state statutes.

The trustee had no interest in the corpus of either trust except as trustee, but he was clothed with broad powers by the indentures in handling, managing, and controlling the corpus of each trust. He was authorized to sell all or any part of the trust assets, invest and reinvest the proceeds in such securities or investments as he, in his absolute discretion, should deem proper, and generally was authorized to exercise in respect of all securities held by him all the rights and powers usually available to persons owning such property in their own right. He was empowered to use either principal or income for the benefit of the trust estate. He was authorized to determine "whether accretions to the trust estate shall be treated as principal or income", except that stock dividends and stock purchase rights should become a part of the principal of the trust estate. It does not appear that any part of the capital gains were from the sale of stock dividends or stock purchase rights. He could determine, in his discretion, whether receipts of money or other property should be treated as principal or income, and whether disbursements should be chargeable to principal or income. All decisions made by him, in good faith, were to be final and conclusive upon all parties in interest. Specific powers were granted the trustee with respect to any real property, or interest therein which might become a part of the trust corpus. The petitioner by an instrument in writing could appoint a successor trustee if any trustee died or resigned or a vacancy otherwise resulted. The petitioner, with the consent of the trustee, could increase the trust corpus at any time. The net income of the trust estate was defined as "the income left after deducting all charges, disbursements and expenditures authorized hereunder or by law in connection with the administration of the trust estate, including a reasonable compensation to the Trustee for his services, provided the Trustee has, in his discretion, charged these items to income instead of principal, as hereinabove set out." The whole legal and equitable title to the trust corpus was vested solely and absolutely in the trustee and no interest whatever

was to be vested in the beneficiary. The beneficiaries were specifically prohibited from disposing of their interest in any manner, and their creditors were prohibited from recovering therefrom. The petitioner grantor specifically renounced any power of revocation and any right to change, alter, or modify either trust.

During 1936 the trustee sold certain capital assets of the Lonsdale trust and realized a capital gain under section 117 of the Revenue Act of 1936 in the sum of $3,413.84.

During 1936 the ordinary income of the Lonsdale trust was $1,137 and the trustee thereof distributed to Alfred Lonsdale the sum of $936 in cash; he also distributed $201 to petitioner, who concedes that such distribution constitutes taxable income to her.

During 1936 the trustee sold certain capital assets of the Mulford trust and realized capital gain under section 117 of the Revenue Act of 1936 in the sum of $1,032.49.

During 1936 the ordinary income of the Mulford trust was $1,-445.84 and the trustee distributed to Alice Bagley Mulford the sum of $1,500 in cash. No distribution was made by the Mulford trust to petitioner during 1936.

After the distributions aforementioned there were excesses of trust income of $3,413.84 in the Lonsdale trust and $963.33 in the Mulford trust. The trustee reported the trust income in each instance on Form 1040, and paid the tax due from the Lonsdale trust. No tax was due from the Mulford trust because of the personal exemption.

Subsequently the respondent determined that said amounts of $3,-413.84 and $963.33 constituted taxable income to this petitioner, and as to the Lonsdale trust he determined an overassessment because of the elimination of said sum from the taxable income of the trust.

It is apparent from the stipulated facts that the trustee distributed all of the ordinary income of both trusts, and a portion of the capital gain of the Mulford trust. No dispute exists as to petitioner's tax liability with respect to the ordinary income distributed to her. The question is whether the capital gains should be considered excess net income of the trusts and taxable to petitioner. In this connection respondent points out that at least $54.16 of the capital gain realized by the Mulford trust was considered distributable net income by the trustee and used to complete the $1,500 paid to Alice Bagley Mulford under the terms of the trust indenture. Respondent contends, therefore, that the capital gains could have been distributed during 1936 to the grantor, and that such capital gains remained distributable to her in the future, which under section 167 (a) (1) and (2) of the Revenue Act of 1936, made such gains taxable income to the petitioner.

Section 167 (a) (1) and (2) provide as follows:

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

\* \* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

The petitioner, as grantor of the instant trusts, had no discretion regarding the accumulation or the distribution of trust income. She provided for the distribution to herself of all trust income in excess of prescribed annual amounts payable to beneficiaries, but she authorized the trustee to fix and determine the character of accretions to the trust estates, which permitted him to classify capital gains as trust income, and therefore, the discretion with which we are concerned is that of the trustee, and not any discretion reserved by the grantor to herself.

The discretion that petitioner lodged in the trustee was broad and absolute. Any decision made in the exercise of his discretion was final and conclusive on all parties in interest, if made in good faith. He could, with two exceptions, treat accretions to the trust estate as principal, or as income; he could treat receipts of money or other property as principal, or as income; and he could charge disbursements for any purpose whatever to principal, or to income. The absence of a specific power to accumulate would not have prevented accumulation by the trustee under the broad discretion granted to him to treat accretions and receipts as income or corpus.

The phrase "a substantial adverse interest", as used in section 167, contemplates a direct interest in the trust income. It means "an interest sufficiently direct and adverse to rebut the presumption that the grantor can control in fact the exercise of discretion by such person", *Loeb* v. *Commissioner*, 113 Fed. (2d) 664. No provisions appear in the present trust indentures vesting in the trustee any direct interest in the income or corpus of either trust. Furthermore, the parties have stipulated that the trustee had no interest in the corpus of either trust except as trustee. Under these facts the trustee had no substantial adverse interest.

By the indentures the trustee had the power and the authority to accumulate capital gains for future distribution, section 167 (a) (1), or he could have distributed such gains immediately to the grantor, section 167 (a) (2). Had a situation developed where petitioner was in need of funds, evidently the trustee would have authority to exercise the discretion lodged in him and distribute the capital gains to the peti-

tioner, or even the trust corpus. In our opinion the discretion lodged in this trustee was amply sufficient to bring the present trusts within the requirements of section 167 (a) (2), that where *any* part of the income of a trust *may* be distributed to the grantor, *then* such part of the trust income *shall* be included in computing the net income of the grantor. Certainly the trustee considered that he had the discretion and authority to treat the capital gains as distributable income, since he distributed a portion of the capital gains of the Mulford trust to the beneficiary thereof. In our opinion he could have distributed the capital gains of either trust, and as he had no substantial interest adverse to the grantor, which would prevent the excess income of the trust from being distributed to petitioner, the trusts fall within section 167 of the Revenue Act of 1936. *H. Cecil Sharp and Wife*, 42 B. T. A. 336; *Greenough* v. *Commissioner*, 74 Fed. (2d) 25; *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401.

*Decision will be entered for the respondent.*